**18-4201**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

5:14-CR-240-BR-1

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

WILLIAM SCOTT DAVIS JR

Defendant – Appellant

NOTICE

THAT THE DEFENDANT –APPEALLAN

HEREBY FIRES AND TERMINATES

APPELLATE COUNSEL
Mr. Paul K Sun Jr.
ELLIS & WINTERS, LLP
4131 Parklake Avenue
P.O. Box 33550
Raleigh North Carolina 27636

1. That Appellant Cousel has a conflict of interest, in being a licensed practicing attorney and law firm of the 10th Judicial District of North Carolina.
2. That Appellant Cousel has a conflict of interest, in being a licensed practicing attorney and law firm, with The Manning Law Firm Attorney Thomas C Manning.
3. The Manning Law Firm, never having been legally appointed, as required by the criminal Justice Act US DC ED NC WD 18 USC 3006A Plain of Compliances having been submitted to the US AOC in compliance with act of Congress.
4. Newly Discovered evidence The Manning Law Firm Attorney Thomas C Manning illegally substituted by 10th Judicial District of North Carolina; State and Local Municipal Government high Ranking Public official, & judiciary of the State Capital of North Carolina Non-Judicial Secrete Private Agreements with US DC ED NC WD federal judges, Non-Judicial Functions and not Judicial Agreement pre-determining the out come of US v DAVIS 5:14-CR-240-BR-1

1

illegally unauthorized 18 USC 3006A substation of Attoney Thomas C Manning never legally appointed by the US PD Offices at Raleigh NC, due process violations. Including Manning hired by the opposition to Criminally prosecuting of William Scott Davis Jr. fraudulent conceaments, fradulent omissions, self concealing denials of due processes, substantive procedural due processes,,

5. Non-Judicial Agreement Hon: W Earl Britt, James C Fox, James C Dever, DE 117 October 14th 2015 Reassignment from Fox to Britt, conspring to 18 USC 4243 Defendant, scheme falling throuth 16-6148.
6. Thus the illegal substitution of Sell Out, conniving at the defeat of William Scott Davis Jr. Non Judicial private agreement Prior to the Court Granting DE 100.
7. Petitioner asserts his Faretta right, and for new standby counsel not of the forth circuit, but of the 2nd circuit New York City, or 3rd Circuit Philadelphia, or District of Columbia US Public Defender, and not independent private indigent defenses Cousel.

Wherefore the Petitioner prays the Court Grant the relief requested.

I declare (or certify, verify, or state) penalty of perjury that the forgoing is true and correct and that this Motion / Petition / was placed in the prison mail system on

_____(Month, Date, Year).,


Executed (Signed) on_____(Date)


_____
Movant-Petitioner
William Scott Davis Jr.,
ID 84944083
Federal Prisoner


Federal Prisoner

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a true copy of the forgoing Affidavit for Petition for rehearing, and rehearing en Banc, Was Mailed this  14 , Day of  April , 2018 to AUSA Ethan A On jest 310 New Bern Ave,. Raleigh North Carolina, 27601

                                                     Movant-Petitioner
William Scott Davis Jr.,
ID 84944083
Federal Prisoner

**18-4201**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

5:14-CR-240-BR-1

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

WILLIAM SCOTT DAVIS JR

Defendant – Appellant

MEMORANDUM OF LAW

In Pro- se case in which the appellant exercise his right to represent himself as suggested by Faretta v California 422 U.C.806 (1975): 28 USC § 1654, the court may find it appropriate to appoint standby counsel for the appellant to assist in the appeal to protect the integrity and ensure to continuity of the judicial proceeding. (McKaskle v. Wiggins, 465 168 (1984); Faretta, Supra)

HEREBY FIRES AND TERMINATES

APPELLATE COUNSEL
Mr. Paul K Sun Jr.
ELLIS & WINTERS, LLP
4131 Parklake Avenue
P.O. Box 33550
Raleigh North Carolina 27636

1. That Appellant Cousel has a conflict of interest, in being a licensed practicing attorney and law firm of the 10th Judicial District of North Carolina.

2. That Appellant Cousel has a conflict of interest, in being a licensed practicing attorney and law firm, with The Manning Law Firm Attorney Thomas C
3. The Manning Law Firm, never having been legally appointed, as required by the Manning.
criminal Justice Act US DC ED NC WD 18 USC 3006A Plain of Compliances having been submitted to the US AOC in compliance with act of Congress.

1

4. Newly Discovered evidence The Manning Law Firm Attorney Thomas C Manning illegally substituted by 10th Judicial District of North Carolina; State and Local Municipal Government high Ranking Public official, & judiciary of the State Capital of North Carolina Non-Judicial Secrete Private Agreements with US DC ED NC WD federal judges, Non-Judicial Functions and not Judicial Agreement pre-determining the out come of US v DAVIS 5:14-CR-240-BR-1

5. Non-Judicial Agreement Hon: W Earl Britt, James C Fox, James C Dever, DE illegally unauthorized 18 USC 3006A substation of Attoney Thomas C Manning 117 October 14th 2015 Reassignment from Fox to Britt, conspring to 18 USC

6. There the illegal substitution of NSPD Q officers in gate the NC chief of William Scott 4243 Defendant, scheme falling throuth 16-6148.

7. Davis does Not have legal Maintaining direct by the opposition to the seaming public outting of William Scott Davis Jr in New York City a rent's Graduite Philadelphia, self Dinteating Gohinals of SePublic Defender and not independed due process indigent defenses Cousel.

Wherefore the Petitioner prays the Court Grant the relief requested.

I declare (or certify, verify, or state) penalty of perjury that the forgoing is true and correct and that this Motion / Petition / was placed in the prison mail system on

___4-14-18_____(Month, Date, Year).,

Executed (Signed) on ___4-14-18_____ (Date)

Movant-Petitioner
William Scott Davis Jr.,
ID 84944083
Federal Prisoner

William Scott Davis Jr.
ID 84944093 Federal Prisoners
801 Industrial Park Drive
Farmville Virginia 23901

4/14/2018

Re: US v Davis 5:14-CR-240 BR-1., and for your withdrawal conflicts of interest neither 10th Judicial district of Nor Carolina... You're terminated / fired   18-4201

APPELLATE COUNSEL
Mr. Paul K Sun Jr.
ELLIS & WINTERS, LLP
4131 Parklake Avenue
P.O. Box 33550
Raleigh North Carolina 27636

Mr. Paul K Sun Jr.,

You're terminated; I have no faith and confidences in you or any 10th Judicial District NC. Attorney, including of the forth circuit/.

In Pro- se case in which the appellant exercise his right to represent himself as suggested by Faretta v California 422 U.C.806 (1975): 28 USC § 1654, the court may find it appropriate to appoint standby counsel for the appellant to assist in the appeal to protect the integrity and ensure to continuity of the judicial proceeding. (McKaskle v. Wiggins, 465 168 (1984); Faretta, Supra)

Yours truly,

*[signature]*

William Scott Davis Jr.

*United States v. Martin*, 378 F.3d 353 (4th Cir. 2004)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,
v.
TAMARA LENISE MARTIN,
Defendant-Appellant.

No. 03-4391

Argued: June 2, 2004
Decided: August 5, 2004

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., District Judge. (CR-02-337)

Before MOTZ and KING, Circuit Judges, and David R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King joined. Senior Judge Hansen wrote a separate opinion concurring in the judgment and joining in the opinion except as to Part IV.

COUNSEL

ARGUED: Linda Jayne Stowers, Winston-Salem, North Carolina, for Appellant. Randall Stuart Galyon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. ON BRIEF: Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

[F.3d 354] OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Tamara Lenise Martin appeals the district court's calculation of her criminal history category. She contends that the court erred in including a prior state sentence for misdemeanor larceny, which had been imposed by a North Carolina district court, and was being considered de novo by a North Carolina superior court at the time of the federal sentencing. Because execution of the state sentence was stayed pending the trial de novo, the district court erred in attributing two criminal history points to that prior sentence pursuant to U.S. Sentencing Guidelines Manual [F.3d 355] § 4A1.1(b) (2002); rather, it should have assessed only one criminal history point under § 4A1.1(c). However, because this error was harmless, we affirm.

I.

On December 4, 2002, Martin pleaded guilty in federal court to bank robbery, in violation of 18 U.S.C. § 2113(a) (2000). In calculating its sentencing recommendation for Martin, the Probation Office prepared a presentence report in which it assigned her five criminal history points. Two of these points were attributable to the prior sentence of a North Carolina district court for misdemeanor larceny. In that case, Martin had originally been charged with "Felonious Larceny by an Employee," but on December 6, 2002, Martin pleaded guilty in a North Carolina district court to misdemeanor larceny and was sentenced to sixty days imprisonment. The record does not disclose whether Martin served any portion of that sentence.

Within ten days, Martin exercised her statutory right to trial de novo in the state case by filing a timely notice of appeal to a North Carolina superior court. The case was still pending in superior court when the

Probation Office prepared its presentence report in Martin's federal case and remained pending at the time of sentencing. (Approximately a month after sentencing, the State dismissed the misdemeanor larceny charge "with leave" because Martin failed to appear for the superior court criminal proceeding. Thus, although a basis for her federal sentence, Martin has no conviction or sentence for misdemeanor larceny under North Carolina law.)

At sentencing in the case at hand, Martin objected to the presentence report, contending that the Probation Office improperly included the sentence attributable to her state misdemeanor larceny conviction in calculating her criminal history category. She argued that the Sentencing Guidelines did not contemplate an "appeal" from a lower trial court to a superior trial court for a trial de novo, and that under North Carolina law, once a defendant exercises her right to a trial de novo, the lower court conviction becomes a nullity for all purposes. Although the district court found Martin's argument "interesting," it ultimately chose to adopt the calculation recommended in the presentence report.

So with five criminal history points, Martin was categorized as a Category III offender, and with an offense level of twenty-two, her applicable guideline range was fifty-one to sixty-three months imprisonment. U.S.S.G. ch. 5, pt. A. The district court imposed a sentence of fifty-two months imprisonment.

II.

The question before us is whether a prior sentence imposed by a North Carolina district court pending a trial de novo in a North Carolina superior court qualifies as a "prior sentence of imprisonment" under the United States Sentencing Guidelines. U.S.S.G. § 4A1.1(b). Before turning to that question, we must first understand how the North Carolina criminal trial system operates.

North Carolina, like many other states, has a "two-tier" system of trial courts for some criminal offenses.[1] Specifically, [F.3d 356] all crimes classified as misdemeanors under North Carolina law are subject to a mandatory two-tier system consisting of district courts ("first tier") and superior courts ("second tier"). *See* N.C. Gen. Stat. §§ 7A-271, 7A-272(a) (2003). Thus, the State must prosecute all misdemeanors in a state district court in the first instance, and a defendant cannot bypass this district court prosecution. *See State v. Martin*, 387 S.E.2d 211, 213 (N.C. Ct. App. 1990).

In district court, defendants must either plead guilty or submit to a bench trial. *Cf.* N.C. Gen. Stat. § 7A-196(b) ("[T]here shall be no jury trials in the district court."). If a defendant is acquitted, all criminal proceedings are terminated. *See State v. Harrell*, 183 S.E.2d 638, 639-40 (N.C. 1971). If, on the other hand, a defendant either pleads guilty or is convicted after a bench trial, she has an absolute right to "appeal" to a superior court and receive a trial de novo with a jury. N.C. Gen. Stat. § 15A-1431(b); *State v. Sparrow*, 173 S.E.2d 897, 902 (N.C. 1970). A trial de novo in a superior court is the defendant's *only* option; North Carolina law provides no avenue for appellate review of the proceedings of a state district court. *State v. Golden*, 251 S.E.2d 875, 877 (N.C. Ct. App. 1979).

If a defendant chooses to file a "notice of appeal" with a superior court, the district court conviction is automatically nullified for most purposes. *Sparrow*, 173 S.E.2d at 902 (explaining that a district court judgment is "completely annulled"); *see also Blackledge v. Perry*, 417 U.S. 21, 22 (1974) (explaining that under the North Carolina statutory scheme, "[w]hen an appeal is taken, . . . the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in the Superior Court"). As for the corresponding sentence, the appeal "stays the execution of portions of the judgment relating to fine and costs . . . [and] portions of the judgment relating to confinement when the defendant has complied with conditions of pretrial release." N.C. Gen. Stat. § 15A-1431(f). If a defendant withdraws her appeal, a superior court will remand the case to the district court to execute the district court judgment. § 15A-1431(g), (h).

In superior court, the defendant is entitled to a trial de novo, without incurring any prejudice, or even effect, from the district court proceeding. *See* § 15A-1431(b); *State v. Thompson*, 163 S.E.2d 410, 412 (N.C. Ct. App. 1968); *cf State v. Ferrell*, 330 S.E.2d 225, 226-27 (N.C. Ct. App. 1985) (holding that a

superior court "committed prejudicial error by permitting the State to question the defendant regarding his failure to testify in the district court trial") (internal quotation marks omitted). A defendant need not demonstrate error in the district court, nor may a superior court give the judgment of a district court any weight. *See Sparrow*, 173 S.E.2d at 902 ("When an appeal of right is taken to the Superior Court, in contemplation of law it is as if the case had been brought there originally and there had been no previous trial."); *see also Blackledge*, 417 U.S. at 22. A superior court likewise is in no way bound by the sentence imposed by a district court, and is free to impose what punishment it sees fit. *Sparrow*, 173 S.E.2d at 903. Similarly, the State is not bound by any plea agreement reached in district court and is permitted to pursue the original charges, even if they represent a felony offense. N.C. Gen. Stat. §§ 7A-271(b), 15A-1431(b); *State v. Fox*, 239 S.E.2d 471, 473 (N.C. Ct. App. 1977).

The purpose of the two-tier system is to "provide[ ] simple and speedy trials of [F.3d 357] misdemeanor cases in the District Court." *State v. Smith*, 323 S.E.2d 316, 329 (N.C. 1984). To achieve such efficiency, district courts do not supply the same safeguards available in superior courts. For example, North Carolina district courts do not afford defendants the right to a jury trial, N.C. Gen. Stat. § 7A-196(b), while all defendants, regardless of the severity of their crimes, are entitled to a twelve-person jury trial in superior court, § 15A-1201. Moreover, North Carolina district courts do not engage in formal plea colloquies prior to accepting guilty pleas, N.C. Gen. Stat. art. 58, official cmt. ("[I]t is clearly expected the [guilty plea] process should be less formal and not subject to the procedural restrictions placed upon pleas of guilty or no contest in superior court."); whereas, superior courts must comply with statutorily-mandated procedures to ensure pleas are knowing and voluntary, *see* § 15A-1022. And, unlike superior courts, North Carolina district courts are not courts of record and there is no avenue for appellate review of their judgments. *Sparrow*, 173 S.E.2d at 903; *see Golden*, 251 S.E.2d at 877.

With this understanding of the two-tiered North Carolina system in mind, the details of which are undisputed, we turn to the sentence at issue here.

III.

Section 4A1.1(b) of the United States Sentencing Guidelines instructs a sentencing court to "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days" and not exceeding one year and one month. U.S.S.G. § 4A1.1(b). Section 4A1.2(a)(1) defines a "prior sentence" as one "previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Section 4A1.2 also directly addresses various dispositions, and specifies when, and if, a sentencing court should include sentences arising from such dispositions in a defendant's criminal history calculation. *See, e.g.*, § 4A1.2(d), (f)-(j), (l). In a comment to this provision, the Sentencing Commission admonishes that "prior sentences, not otherwise excluded, are to be counted in the criminal history score." U.S.S.G. § 4A1.2, cmt. background.

A.

The Guidelines do not specifically address dispositions arising from a two-tier criminal trial system like that employed by North Carolina and other states. Perhaps because of this omission, both the Government and Martin strive to force Martin's sentence into one of the categories that § 4A1.2 does expressly address. On the one hand, the Government argues that § 4A1.2(1), which provides that "[p]rior sentences under appeal are counted except as expressly provided below," controls the case at hand. On the other, Martin contends that her sentence is covered under § 4A1.2, cmt. n.6, which excludes certain reversed or vacated convictions. Neither of these categories, however, adequately describes the sentence at issue here.

Although North Carolina law refers to the request for a trial de novo in the superior court as an "appeal," *see* N.C. Gen. Stat. § 15A-1431, the term "appeal" is a misnomer. Black's Law Dictionary defines an "appeal" as a "[r]esort to a superior (*i.e.* appellate) court to review the decision of an inferior (*i.e.* trial) court or administrative agency." Black's Law Dictionary 96 (6th ed. 1990). But in "appealing" from the North Carolina district court to superior court, Martin did not seek (and indeed could not seek) review of the district court proceeding or disposition; rather, she requested (and was only [F.3d 358] entitled to request), a trial de novo irrespective of the proceedings or disposition in the "inferior" court. *See ante* at

356-57. Thus, despite the state nomenclature assigned to the mechanism triggering a new trial (which the Government properly recognizes does not control here), it is clearly not, as the Supreme Court has recognized in similar circumstances, a true "appeal." *See Colten*, 407 U.S. at 115 (recognizing that under Kentucky's two-tier scheme "the 'appeal' is in reality a trial de novo").

Martin's contention that her conviction was "vacated," and thus should be excluded under § 4A1.2, cmt. n.6, must also be rejected. As an initial matter, Martin's conviction was not technically "vacated" as that term is commonly understood. "Vacate" means "[t]o render an act void; as, to vacate an entry of record, or a judgment." Black's Law Dictionary 1548 (6th ed. 1990). And a judgment that is "void," as opposed to one that is merely "voidable," "is nugatory and ineffectual so that nothing can cure it." *Id.* at 1573. Although Martin's district court judgment was nullified for most purposes, *see ante* at 356, it was not "void ab initio" as Martin claims. Rather, if Martin had chosen to withdraw her request for a trial de novo, the superior court would have remanded her case to the district court to execute the previously entered judgment. N.C. Gen. Stat. § 15A-1431(g), (h). Thus, Martin's conviction was not technically "void" or "vacated."

Moreover, even if her conviction could roughly be characterized in such a manner, it is nevertheless not the type of vacated conviction warranting exclusion under the Guidelines. The commentary to the Guidelines only excludes convictions vacated "because of errors of law or because of subsequently discovered evidence exonerating the defendant," or those that were "ruled constitutionally invalid in a prior case." U.S.S.G. § 4A1.2, cmt. n.6. None of these circumstances are present in the case at hand.

B.

Although Martin's state misdemeanor larceny sentence was not "under appeal" pursuant to § 4A1.2(1), or the result of a "vacated" conviction pursuant to § 4A1.2, cmt. n.6, it does fall within one of the other types of dispositions expressly discussed in § 4A1.2; the "execution of [Martin's] sentence was totally . . . stayed" under § 4A1.2(a)(3).

Under North Carolina law, appeal to a North Carolina superior court for a trial de novo "*stays* the execution of portions of the judgment relating to fine and costs . . . [and] *stays* portions of the judgment relating to confinement when the defendant has complied with conditions of pre-trial release." N.C. Gen. Stat. § 15A-1431(f) (emphases added).

Of course, whether Martin's sentence was "stayed" for the purposes of § 4A1.2(a)(3) is a question of federal law. *See, e.g., United States v. Stewart*, 49 F.3d 121, 123 n.3 (4th Cir. 1995). Nonetheless, state law can be informative for the limited purpose of determining the effect of the state court's sentence. *See United States v. Compian-Torres*, 320 F.3d 514, 516 (5th Cir. 2003). And, in this instance, as the Government itself concedes, the state court designation accurately depicts the state of Martin's sentence during the pendency of her trial de novo in superior court.

"To 'stay' an order or decree means to hold it in abeyance, or refrain from enforcing it." Black's Law Dictionary 1413 (6th ed. 1990). Once a defendant requests a trial de novo in North Carolina superior court, the state district court judgment is [F.3d 359] held in abeyance — it is not executed, nor is it technically vacated. Rather, as explained earlier, in the event that Martin chooses to withdraw her request for a trial de novo, the superior court will remand her case to the district court to execute the heretofore "stayed" sentence. N.C. Gen. Stat. § 15A-1431(g), (h).

Because Martin's misdemeanor larceny conviction in North Carolina district court was one "for which the . . . execution of sentence was totally . . . stayed," it should have been "counted as a prior sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(a)(3). That section, unlike § 4A1.1(b) (upon which the district court relied to assign Martin two criminal history points), only allots *one* criminal history point for each prior sentence. U.S.S.G. § 4A1.1(c). Thus, the district court improperly calculated Martin's criminal history by assigning Martin five criminal history points rather than four.[2] Nevertheless, this error was harmless; offenders with four or five criminal history points are both classified as Category III offenders, *see* U.S.S.G. ch. 5, pt. A., leaving the applicable guideline range unchanged.

IV.

Although we ultimately uphold the inclusion of Martin's state misdemeanor larceny sentence in calculating her criminal history, as mandated by the Guidelines, we are cognizant that counting the state sentence at issue here — a sentence imposed upon an adjudication of guilt in the first tier of a two-tier state system and awaiting a trial de novo in the second tier — in a defendant's federal criminal history category could have significant and troubling consequences. Indeed, there are compelling reasons not to count these dispositions at all, or at the very least, to limit their use to circumstances in which the criminal history category does not adequately reflect the seriousness of a defendant's past criminal history under U.S.S.G. § 4A1.3.

As an initial matter, the adjudication and sentence arising out of the first tier merely constitute an interim disposition in what is, in reality, a bifurcated trial system, and as such, lack any semblance of finality. *See, e.g., Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 309 (1984) (agreeing that "[w]hile technically [the defendant] is 'tried again,' the second stage proceeding can be regarded as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings . . .") (internal quotation marks and citation omitted). Moreover, the first-tier proceeding lacks a number of procedural and constitutional safeguards normally afforded to criminal defendants, casting substantial doubt on the reliability of the resulting interim disposition. *See ante* at 357. Indeed, the Supreme Court has candidly acknowledged that these first-tier "inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms." [F.3d 360] *Colten*, 407 U.S. at 117 (internal quotation marks and citation omitted).

Even more troubling, however, basing federal sentences on convictions obtained in first-tier courts that do not afford defendants any right to a jury trial may render two-tier state systems unconstitutional in those instances in which the constitutional right to a jury trial is implicated. Although the Supreme Court has held that the absence of a jury in the first tier, as long as one is eventually provided, does "not unduly burden[ ]" a defendant's constitutional right to a jury trial, in doing so, it presumed that virtually no collateral consequences would result from a judgment rendered in a first-tier court. *Ludwig v. Massachusetts*, 427 U.S. 618, 624-30 (1976); *see also Lydon*, 466 U.S. at 310 (stating that "virtually nothing can happen to a defendant at a first-tier trial that he cannot avoid" because "[o]nce the right to a trial de novo is exercised, the judgment at the bench trial is 'wiped out'"); *Colten*, 407 U.S. at 119-20 (stating that "a defendant can bypass the inferior court simply by pleading guilty and erasing immediately thereafter any consequence that would otherwise follow from tendering the plea"). Mandating inclusion in a defendant's criminal history of a sentence imposed pursuant to a conviction in the first tier, when the defendant has affirmatively exercised her absolute right to a de novo jury trial in the second tier, would seemingly constitute a significant collateral consequence. Thus, applying the Guidelines as written raises serious questions about the constitutional validity of the two-tier system (in instances where a defendant's jury trial right is implicated) both in North Carolina and in the many other states employing similar systems.

Despite these grave, and perhaps unintended, consequences, we believe that the Guidelines' admonition that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score," U.S.S.G. § 4A1.2, cmt. background, requires the result we reach here. Accordingly, we affirm. But, in doing so, we suggest that the Sentencing Commission carefully consider, in light of the ramifications discussed above, whether, and to what extent, state interim sentences arising out of two-tier criminal trial systems should be included in a defendant's criminal history category.

*AFFIRMED.*

FOOTNOTES

[1] In addition to North Carolina, approximately half of the states appear to employ some type of two-tier system. *See Colten v. Kentucky*, 407 U.S. 104, 112 n.4 (1972); David A. Harris, *Justice Rationed in the Pursuit of Efficiency: De Novo Trials in the Criminal Courts*, 24 Conn. L. Rev. 381, 382-83 (1992).

[2] We note that the same result could be warranted for another reason; Martin's state misdemeanor larceny sentence may not constitute a "prior sentence of imprisonment" under § 4A1.1(b). "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)." U.S.S.G. § 4A1.2, cmt. n.2. As noted above, we cannot determine from the record whether Martin served any portion of the sixty-day sentence imposed by the North Carolina district court. If, in fact, she did not actually serve at least a portion of that sentence, her misdemeanor larceny sentence would not constitute a "sentence of imprisonment" under § 4A1.1(b), and thus could only be accorded one criminal history point as a "prior sentence not counted in (a) or (b)" under § 4A1.1(c). U.S.S.G. § 4A1.1(c); *see also United States v. Murphy*, 241 F.3d 447, 459 (6th Cir. 2001).

HANSEN, Senior Circuit Judge, concurring in the judgment and joining in the opinion except as to Part IV.

I readily concur in the judgment and in all of the court's opinion except for Part IV. I respectfully decline to join Part IV because, in the circumstances of this case, Martin's right to a jury trial was not violated. I would therefore not render an advisory opinion as to potential constitutional infirmities in theoretical future cases. Further, I am unwilling to assume, as the court apparently does, that the Sentencing Commission has not already considered what effect should be given to a first-tier state court conviction in a two-tier state system. Given the fact that about half of the States employ such a system, I find it hard to believe that the Commission would have overlooked the matter for fifteen years, particularly when it has considered and provided for even more rare events, e.g., tribal, military, and foreign convictions.

*United States v. Martin*, 378 F.3d 353, ___ (4th Cir. 2004)

we vacate the sentence and remand for resentencing.

A.

In *United States v. Booker*, 543 U.S. 220, ___, 125 S. Ct. 738, 756 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to a mandatory guidelines system, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. To remedy this problem, the Court severed and excised the provisions [F.3d 432] of the Sentencing Reform Act[3] that mandated sentencing and appellate review in conformance with the guidelines. *See Booker*, 543 U.S. at ___, 125 S. Ct. at 764 (severing and excising 18 U.S.C.A. § 3553(b)(1) (West Supp. 2005) and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2005)). This excision rendered the guidelines "effectively advisory," *id.* at 757, and replaced the previous standard of review with review for reasonableness, *see id.* at 765-66.

That the guidelines are non-binding in the wake of *Booker* does not mean that they are irrelevant to the imposition of a sentence. To the contrary, remaining provisions of the Sentencing Reform Act require the district court to consider the guideline range applicable to the defendant and pertinent policy statements of the Sentencing Commission. *See* 18 U.S.C.A. § 3553(a)(4), (a)(5); *Booker*, 543 U.S. at ___, 125 S. Ct. at 767 (stating that district courts "must consult [the] Guidelines and take them into account when sentencing"). In addition to the guidelines, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1); the court also must ensure that the sentence it imposes "fulfill[s] the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; . . . providing restitution to victims," and avoiding unwarranted sentencing disparities. *United States v. Green*, 436 F.3d 449, 2006 WL 267217, at *4 (4th Cir. Feb. 6, 2006); *see* 18 U.S.C.A. § 3553(a)(2), (a)(3), (a)(6), (a)(7).

Thus, in imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court must "determine

whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *Green*, 2006 WL 267217, at *4. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. (We will return to this subject momentarily.) If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. *See* 18 U.S.C.A. § 3553(c) (West Supp. 2005); *Hughes*, 401 F.3d at 546 & n.5. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. *See Green*, 2006 WL 267217, at *4-*5. The district court need not discuss each factor set forth in § 3553(a) "in checklist fashion"; "it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) (internal quotation marks omitted). [F.3d 433]

We note that the continuing validity of departures in post-*Booker* federal sentencing proceedings has been a subject of dispute among the circuits. *Compare United States v. McBride*, 2006 WL 89159, at *4 (6th Cir. Jan. 17, 2006) (stating that consideration of a departure is part of calculating the correct guideline range), *with United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006) (holding that district courts must decide whether a "traditional departure" is appropriate after calculating the guideline range and before deciding whether to impose a variance sentence (internal quotation marks omitted)), *and with United States v. Vaughn*, 2006 WL 29208, at *5 (7th Cir. Jan. 6, 2006) ("[T]he concept of a discretionary departure . . . has been rendered obsolete in the post-*Booker* world." (internal quotation marks omitted)). We believe, however, that so-called "traditional departures" — *i.e.*, those made pursuant to specific guideline provisions or case law[4] — remain an important part of sentencing even after *Booker*.[5]

Our task in reviewing a post-*Booker* federal sentence is to determine whether the sentence is "within the statutorily prescribed range and is reasonable." *Hughes*, 401 F.3d at 547 (citations omitted). Although this standard clearly requires us to afford a degree of deference to the sentencing decisions of the district court, "reasonableness" is not a code-word for "rubber stamp." Our task is a "complex and nuanced" one, *Green*, 2006 WL 267217, at *5, requiring us to consider the extent to which the sentence imposed by the district court comports with the various, and sometimes competing, goals of § 3553(a).

The reasonableness of a sentence ultimately will turn on the particular factors of each case. Nevertheless, certain principles would appear to be universally applicable. As always, we review legal questions, including the interpretation of the guidelines, de novo, while factual findings are reviewed for clear error. *See United States v. Caplinger*, 339 F.3d 226, 233 (4th Cir. 2003). "An error of law," such as incorrectly identifying the applicable guideline range, "can render a sentence unreasonable," as can an error of fact. *Green*, 2006 WL 267217, at *5.

A sentence that falls within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness. *See, e.g., United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005). This does not mean, however, that a variance sentence is presumptively unreasonable. Such a ruling would transform an "effectively advisory" system, *Booker*, 543 U.S. at ___, 125 S. Ct. at 757, into an effectively mandatory one. Rather, in reviewing a variance sentence, this court must consider — in light of the factors enumerated in § 3553(a) and any relevant [F.3d 434] guideline provisions — whether the district court acted reasonably with respect to (1) the imposition of a variance sentence, and (2) the extent of the variance. *See id.* at 765-66; *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005); *cf. United States v. Hairston*, 96 F.3d 102, 106-07 (4th Cir. 1996) (noting that both the decision to depart and the extent of departure are subject to review for abuse of discretion).

Reasonableness review involves both procedural and substantive components. *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, 74 U.S.L.W. 3393 (U.S. Jan. 9, 2006) (No. 05-7953). A sentence may be procedurally unreasonable, for example, if the district court provides an inadequate statement of reasons or fails to make a necessary factual finding. A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission. *See Green*, 2006 WL 267217, at *5; *see also United States v.*

*Clark*, 434 F.3d 684, 2006 WL 60273, at *3 (4th Cir. Jan. 12, 2006) (holding sentence unreasonable insofar as the district court rested the sentence on a misapplication of § 3553(a)(6)).

Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable. However, when the variance is a substantial one — such as the two-thirds reduction from the bottom of the advisory guideline range that is at issue here — we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be. *See Dean*, 414 F.3d at 729; *accord United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005) (holding, in the context of a downward departure for substantial assistance to the government, that "[a]n extraordinary reduction must be supported by extraordinary circumstances").

B.

We now recount the manner in which the district court sentenced Moreland. As it was required to do, the district court first correctly identified the applicable guideline range. The court determined that Moreland had previously been convicted of two felony controlled substance offenses: in 1992, for delivering a marijuana cigarette to a prison inmate; and in 1996, for possessing with the intent to deliver 6.92 grams of cocaine base. In light of these prior offenses, Moreland's age, and the nature of the offenses of conviction, the guidelines, pursuant to congressional direction, indicated that Moreland should be sentenced as a career offender. *See* U.S.S.G. § 4B1.1(a); 28 U.S.C.A. § 994(h) (West 1993 & Supp. 2005). Because the maximum statutory penalty was life imprisonment, *see* 21 U.S.C.A. § 841(b)(1)(B) (West 1999 & Supp. 2005), the career offender guideline provided for a base offense level of 37, *see* U.S.S.G. § 4B1.1(b)(A). This offense level, combined with the guideline-dictated Criminal History Category of VI, *see id.* § 4B1.1(b), produced a guideline range of 360 months to life imprisonment. The district court determined (incorrectly, as explained *infra* note 9) that without application of § 4B1.1, Moreland's guideline range would have been 78-97 months.

The second question we must address is whether the extent of the variance was reasonable. For the reasons set forth below, we conclude that the district court committed "a clear error of judgment by arriving at a sentence outside the limited range of choice dictated by the facts of the case." *Hawk Wing*, 433 F.3d at 631 (internal quotation marks omitted).

We note at the outset that the problem does not lie in the manner in which the district court set forth its reasoning concerning the sentence imposed — in other words, the sentence is reasonable in a procedural sense. Indeed, the careful consideration of the pertinent § 3553(a) factors by the district court was exemplary. However, the circumstances of this case are not so compelling as to warrant the substantial variance imposed by the district court.

---

additionally maintains that the district court should have authorized the disclosure of information regarding the composition of the grand jury that indicted him or at least should have reviewed the information *in camera*. Because Moreland made no showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii), we hold that the district court did not abuse its discretion in denying the request, *see In re Grand Jury Subpoena*, 223 F.3d 213, 219 (3d Cir. 2000) (stating standard of review).

[3] Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987-2040 (1984) (codified as amended at 18 U.S.C.A. §§ 3551-3742 (West 2000 & Supp. 2005) and at 28 U.S.C.A. §§ 991-998 (West 1993 & Supp. 2005)).

[4] A traditional departure based upon case law would include, for example, a departure premised on a previous determination by this court that a particular circumstance is outside the "heartland" of the applicable guideline. *See* U.S.S.G. § 1A1.1, ed. note 4(b); *United States v. Barber*, 119 F.3d 276, 280-81 (4th Cir. 1997).

[5] Although we are certain that departures continue to be relevant to post-*Booker* federal sentencing proceedings, we are less certain that the district court must continue to provide notice of an intent to depart "on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h); *see Hawk Wing*, 433 F.3d at 633 (Loken, Chief Judge, concurring) (arguing that a "notice error" is harmless "because, after *Booker*, every defendant is aware that the [district] court may sentence outside the guidelines range based on the § 3553(a) factors"). This issue remains to be resolved in an appropriate case.

[6] The district court did not explicitly consider the possibility of a departure under U.S.S.G. § 4A1.3(b)(1), p.s. (allowing for a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"). We do not fault it for not doing so, however. At the time of Moreland's sentencing, the only direction from this circuit regarding post-*Booker* sentencing was *Hughes*, which did not mention departures. In any event, as discussed *infra* note 8, such a departure would have been improper.

[7] Indeed, the Government conceded as much at oral argument. The Government's challenge to the sentence is not to the fact of the variance, but to its extent.

[8] This holding is not inconsistent with our pre-*Booker* holdings regarding *departures* from a career offender guideline range. *See United States v. Pearce*, 191 F.3d 488, 498 (4th Cir. 1999) ("[W]e cannot conceive of any drug felony that would be considered minor" for purposes of departing from a career offender guideline range.); *United States v. Brown*, 23 F.3d 839, 841-42 (4th Cir. 1994) (holding that downward departure from career offender guideline range was not justified by small amount of drugs involved in prior offense). Were we reviewing a departure under the previous, mandatory system, these precedents would compel us to reverse. However, what we are reviewing here is an exercise of discretion by the district court to impose a sentence under § 3553(a). Previous rulings concerning departures under the now-defunct § 3553(b)(1) may inform our analysis of such a sentence, but they cannot control it.

[9] In this vein, we note that we are not persuaded that sentencing Moreland to the statutory mandatory minimum sentence will provide "just punishment" for the offense. 18 U.S.C.A. § 3553(a)(2)(A). There is no question that ten years is "a very substantial amount of time to spend in prison." *Moreland*, 366 F. Supp. 2d at 420. It is also, however, the same sentence Moreland would have received if he had had only one prior conviction. The sentence imposed by the district court thus does not truly account for Congress' judgment that those who repeatedly commit drug felonies should be severely punished for their actions.

Further, it was incorrect for the district court to compare the statutory mandatory minimum sentence of ten years to the guideline range of 78 to 97 months imprisonment that it calculated would have applied to Moreland had he not qualified for career offender status. *See id.* Once the Government established that Moreland had been convicted of *one* prior drug felony, he became subject to a statutory mandatory minimum term of ten years imprisonment. *See* 21 U.S.C.A. § 841(b)(1)(B). Moreland's guideline range had he not been a career offender, therefore, would have been ten years. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

[10] For an example of truly compelling circumstances justifying the imposition of a sentence nearly twice the maximum of the advisory guideline range, see *United States v. Jordan*, 2006 WL 73406, at *4-*6 (7th Cir. Jan. 13, 2006).

*United States v. Moreland*, 437 F.3d 424, 438 (4th Cir. 2006)

Swallow Scott Rohr
CCIW 663
[illegible] VA 23951

Clerk of Court
For the Court of
Appeals for the
Fourth Circuit
1100 East main st
Richmund VA 23219